UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN DE JESUS PEREZ SALGADO, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, Golden State Annex; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd LYONS, Acting Director, U.S. Immigration and Customs Enforcement; Todd BLANCHE, Acting Attorney General of the United States, U.S. Department of Justice, <br><br> Respondents. | Case No. 1:26-cv-03498-NW <br><br> **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** <br><br> Re: ECF Nos. 1, 2 |

This habeas action concerns the detention of Petitioner Ivan De Jesus Perez Salgado ("Petitioner"), a noncitizen who has lived in the United States for over seventeen years. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as mandating detention for all noncitizens present in the United States without admission, Petitioner is being detained without the opportunity for a bond hearing. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus. Petitioner's motion for a temporary restraining order is resolved as moot.

I.    **BACKGROUND**

Petitioner is a citizen of Mexico who entered the United States without inspection or admission in or about January 2009. ECF No. 1 ¶¶ 28–29. He was not "encountered by immigration authorities at or near the border at the time of entry[,]" nor has he ever been "subjected to inspection, expedited removal proceedings, credible fear screening, or any form of

United States District Court
Eastern District of California

initial processing under" the Immigration and Nationality Act ("INA") § 235.[1] *Id*. ¶ 30.

Based on the record before the Court, Petitioner's first interaction with immigration authorities occurred during his recent arrest. On March 30, 2026, Petitioner was stopped while driving in Florida (allegedly for over-tinted windows) and subsequently taken into ICE custody. *Id*. ¶ 32. He has since been transferred to several detention facilities across the United States and is now being held at the Golden State Annex in McFarland, California. *Id*. ¶ 34.

Several months before his detention, the Department of Homeland Security ("DHS") issued a policy asserting that all noncitizens who entered the United States without admission or parole are subject to 8 U.S.C. § 1225 ("Section 1225"), a statutory provision that mandates detention. *Id*. ¶¶ 49–50. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading of the statute. *Id.*

Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order, arguing that the Government's application of Section 1225 to him violates the INA and the Due Process Clause of the Fifth Amendment. *Id*. ¶¶ 54–69. In Respondents' two-paragraph response the Government does not allege that Petitioner has a criminal record in the United States or elsewhere. ECF No. 7. Instead, the Government relies entirely on its new interpretation of 8 U.S.C. § 1225(b)(2)(A) as mandating Petitioner's detention, a position Petitioner disputes in his reply. ECF No. 8.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

[1] The INA § 235 is codified as 8 U.S.C. § 1225.

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.     DISCUSSION**

Petitioner argues that he is being unlawfully detained under Section 1225 in violation of the INA and his due process rights. *See* ECF No. 1 ¶¶ 55, 69. According to Petitioner, 8 U.S.C. § 1226 ("Section 1226") controls his arrest and detention. *Id*. ¶ 57. As a remedy for the Government's unlawful detention under Section 1225, he requests that he immediately be released from custody, or, in the alternative, be provided with "a prompt individualized custody hearing before a neutral decisionmaker pursuant to" Section 1226. *Id*. at 12. In opposition, Respondents argue that Petitioner is "subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)[]" because he "entered the United States illegally[,]" and is, thus, an "applicant for admission" as defined in Section 1225. ECF No. 7 at 1.

Courts throughout this Circuit, however, have rejected Respondents' argument, holding that Section 1225 does not apply to noncitizens like Petitioner who entered the United States without inspection many years ago. *Gutierrez v. Chesnut*, No. 1:25-cv-1515 DAD AC, 2025 WL 3514495, at *4 (E.D. Cal. Dec. 8, 2025); *Beltran v. Noem*, No. 25-cv-2650-LL-DEB, 2025 WL 3078837, at *7 (S.D. Cal. Nov. 4, 2025) ("Petitioners' detention, as noncitizens present in the United States without being admitted or paroled … and who were residing in the country prior to being charged, is governed by the discretionary detention provision of § 1226(a)"); *Garcia v. Noem*, No. 5:25-cv-02771-ODW-PD, 2025 WL 2986672, at *4 (C.D. Cal. Oct. 22, 2025) ("the statutory text does not support Respondents' contention that § 1225 governs where, as here, an alien is present in the United States without admission"); *Lepe v. Andrews*, 801 F. Supp. 3d 1104 (E.D. Cal. 2025) ("The government's argument that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive."); *Aquino v. LaRose*, No. 25-CV-2904-RSH-MMP, 2025 WL 3158676, at *2 (S.D. Cal. Nov. 12, 2025); *see also*, *Barbosa da Cunha v. Freden*, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026). This Court

United States District Court
Eastern District of California

3

concludes likewise, and finds that detention, bond, and release in Petitioner's case is governed by Section 1226, which, under its implementing regulations, provides for a bond hearing. *See* 8 C.F.R. § 1236.1(d)(1) ("respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released").

Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at \*2 (D. Mass. July 7, 2025). "Other than this limited exception[,] … detention under § 1225(b)(2) is considered mandatory … [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 795 F.Supp.3d 475, 483-84 (S.D.N.Y. Aug. 13, 2025).

In contrast, Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[,]" *Jennings*, 583 U.S. at 289 (emphasis added), establishing "a discretionary detention framework." *Lopez Benitez*, 795 F.Supp.3d at 484 (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge … that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

That Section 1226, rather than Section 1225, applies to noncitizens like Petitioner who

United States District Court
Eastern District of California

4

have been living in the country for many years follows from the plain text and structures of the statutes and DHS's longstanding prior practice. As to the text of Section 1225, it explains that the detention scheme applies to all noncitizens who are "applicants for admission or otherwise *seeking admission* or readmission to or transit through the United States[.]" 8 U.S.C. § 1225(a)(3) (emphasis added). To seek means "asking for" or "trying to acquire or gain." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking. And the term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "To piece this together, the phrase seeking admission means that one must be actively seeking lawful entry" to, as opposed to seeking to remain in, the United States. *Lepe*, 801 F.Supp.3d at 1113 (internal quotations omitted).

The structure of Section 1225 and Section 1226 also supports the application of Section 1226 to Petitioner. As the Supreme Court noted in *Jennings*, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. But Section 1226 is the "default rule" for "the process of arresting and detaining" aliens who are already "inside the United States[]" and "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 288–89 (emphasis added). Here Petitioner has been in the United States continuously since 2009 and was not actively seeking admission at the time he was arrested.

Finally, "for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025). "[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). The Government's longstanding practice of applying Section 1226, and not Section 1225, to noncitizens in Petitioner's circumstances is consistent with the statutes' text and overall statutory scheme.

As such, the Court concludes that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and that Petitioner's detention, bond, and release are instead governed by 8 U.S.C. § 1226(a).

United States District Court
Eastern District of California

IV.    CONCLUSION

For the foregoing reasons, the Petition is GRANTED.  Within seven (7) days of this order Respondents are directed to arrange a bond hearing for Petitioner before a neutral immigration judge pursuant to 8 U.S.C. § 1226(a) and its implementing regulations.  The Court declines to order Petitioner's immediate release.


**IT IS SO ORDERED.**

Dated: May 14, 2026

Noël Wise
United States District Judge